STATE, Use of MARY E. MUMMAUGH et al. *vs.* THE
WESTERN MARYLAND RAILROAD CO.

*Negligence—Sufficiency of Declaration—Person Assisting Railway Em-
ployees in Shipment of His Property Not a Mere Volunteer and En-
titled to Recover for Injury Caused by Negligence of Railway.* .

When a person enters the car or train of a railway company to deliver his
property for transportation and this entry is made with the knowledge
and consent of the company's agents, according to a custom of ship-
pers, or if he enters to assist the company's agents, at their invitation,
in the shipment of his property, such person is not then acting merely
as a volunteer, and the railway company is liable for a failure to exercise
due care to see that he is not injured while on the train or in the act of
leaving it.   Consequently a declaration which alleges that an injury was
negligently caused to a person on defendant's train under these circum-
stances is sufficient in law.

Appeal from the Circuit Court for Carroll County.

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*James A. C. Bond* (with whom were *J. M. Reifsnider* and
*F. N. Parke* on the brief), for the appellant.

The following facts are stated in the declaration and admittted
by the demurrer: (1) That the defendant is a railroad corpora-
tion engaged in operating its road through Carroll County in
transporting passengers and freight; (2) that on the morning of
the 28th of June, 1901, George W. Mummaugh, a small
farmer shipper of Carroll County, Maryland, took to "Car-
rollton," a station of defendant's road in Carroll County, a
calf for shipment by it from said station to the city of Balti-
more; (3) that in pursuance of the custom and habit prevail-
ing at said station in the matter of shipping live stock, etc.,
by defendant's train No. 2, and in and by its market car thereto
attached, with full knowledge of the existence and prevalence

of said custom and habit, at said station, by both the agents and servants of the defendant in the management of said train and car, and the shippers at and from said station, the deceased in accordance with said custom and habit, and on the invitation and by the consent and with the approval of the agents and servants of defendant then and there in charge of said train, entered upon said train and into said market car with said calf for the purpose of making delivery thereof to defendant; and that whilst upon said train and in said car for the purpose aforesaid and with the knowledge of said agents and before having time to complete said delivery and get out and off said car on and upon the platform whence he had taken said calf, and using due care and haste, the agents and servants of defendant then and there in charge of said train and car with full knowledge of the fact that said Mummaugh was in said car and on said train in the act and for the purposes of delivering said calf as aforesaid, and without giving notice or timely or reasonable warning to said Mummaugh to leave and get off said train and from said car, *negligently caused the said train and car to suddenly and abruptly start and be put in motion;* and that said Mummaugh, without any fault or negligence on his part, and whilst exercising due care and caution in attempting to leave said train and car, was thereby thrown against the ground with such violence that he was injured and knocked insensible and that he died from said injuries on the following 30th day of June, 1901; (4) that the death of said Mummaugh was directly caused by the wrongful act, negligence and default of defendant or its servants, and that no want of care or diligence on the part of the deceased contributed to the accident.

From the foregoing review and analysis, it ought certainly to appear that the allegations of negligence charged in this particular declaration are beyond anything ever heretofore required in Maryland or elsewhere, in matter of fullness of statement or specificness. The disclosures of facts show that the deceased was entitled to the *very highest exercise of care and duty on the part of the agents of the defendant for his*

*safety and protection, as they were then and there willingly accepting an invited service from him in aid of their own duties.*

Even though he had been upon the train, as an intruder or trespasser, the authorities are all one way, that the agents of the company would not have been permitted to jeopardize his limb or life by disregard of the ordinary rules of prudence and care governing the movements of their train.    This is a universally accentuated principle of law, enforced in every enlightened jurisdiction of the world and founded in a "natural motive of action of the highest order," which we call "duty."    The case of *New York, Philadelphia and Norfolk R. R. Company* v. *Coulborne,* 69 Md. 367, *is at every point with this* and establishes on final authority the right to recover in this action.    See also *P. W. & B. R. Co.* v. *Bitzer,* 58 Md. 399; *Geis* ats. *Northern Central Railway Co.,* 31 Md. 357; *East Brooklyn Co.* v. *Nudling,* 96 Md. 392, and *State, use Dodson* v. *Baltimore & Lehigh R. R. Co.,* 77 Md. 493; *W. Va. Central Railroad Company* v. *Fuller,* 96 Md. 666.

In the note to case of *King* v. *Oregon Short Line R. Co.,* 59 L. R. A. 212, the following statement appears with the authorities:

"And the rule best supported by authority and most consonant with reason is that it is sufficient, in an action for damages for alleged negligence, to aver that the defendant negligently performed, or negligently omitted to perform, some act the performance or non-performance of which caused the injury complained of.    The pleading need not show all the various facts from which the negligence may be deduced.

*Benjamin F. Crouse* (with whom was *John M. Roberts* on the brief ), for the appellee.

If Mummaugh had been a passenger, then the declaration would have been good if it had stated that fact and charged negligence on part of the defendant and due care and want of negligence on part of deceased; not being a passenger the declaration must state such facts as show a duty on the part of the defendant towards deceased and that duty negligently left

undischarged or unfulfilled.   Mummaugh was not a passenger, nor had he the rights of one; and the decree and quality of vigilance required of a carrier of passengers for hire, do not apply in this case. The injury he sustained was caused by his own negligence and imprudence and not by the negligence or want of care of defendant.   *Breinig's case*, 25 Md. 387; *Kerr case*, 25 Md. 521; *Coughlan's case*, 24 Md. 84–108; *Story on Bailment*, 28; *Poe's Pleading*. page 623, class C.

What duty or obligation did the defendant owe the deceased in the case ?    Having brought his calf to the premises and station of the defendant and placed it on the platform provided by the defendant for goods to be placed for shipment on its cars and trains, he had performed his full duty in delivering the calf to the defendant whose duty it then became to place it on the car for transportation.   Mummaugh had no right to get on this car even with the knowledge and consent of the agents of the defendant, and in doing so took upon himself all risk for the same.

The defendant had employed its agents and servants who were in charge of the car and train, its work was fully entrusted to them and there was no authority in them to delegate it to others.   In going upon the car, as stated, to do the work which it was the duty of the defendant's servants to do, even though he did so with the knowledge and consent of defendant's servants or employees or at their invitation, he was a mere volunteer and as such this action cannot be maintained for an injury, even though caused by the negligence or misconduct of said servants or employees.   He could not, by his officious conduct impose a greater duty on the appellee than that which the latter owed to its hired servants; and it is immaterial whether the injury occurred while assisting said employee gratutiously or at the request of the latter.   *Elliott, Roads and Streets*, 2nd ed. 784; *Thompson on Negligence*, p. 1045.

In the additional or 2nd count the plaintiff endeavors to bring this case within the rulings in the *Coulbourne case*, 69 Md. 368, by stating: "Said Mummaugh, whilst being law-

fully on said market car and in and upon said train in the act of delivering said calf in the manner as aforesaid," but this statement is a conclusion or inference and is not proper to be pleaded.   In that case Coulbourne had gotten on the car of defendant at its request and invitation to transact business of mutual concern to himself and defendant which could not be transacted elsewhere and the place had been selected by the defendant on one of its cars, which fact placed Coulbourne on said car for a "lawful purpose," but in the case at bar it was not necessary for Mummaugh to go upon the car to his business with this defendant and his going there was merely voluntary, because others had done the same before.

In the *Benson case*, 77 Md. 535, the party injured was lawfully on the premises, but the Court held in that case on demurrer to the declaration that plaintiff had not stated a good cause of action although he had specially charged negligence on the part of the defendant and that plaintiff was not negligent and had used due care.

The premises where passengers and persons having business with a railroad company are entitled to go, must be kept in such repair that they may not be hurt and injured by going upon them, but no one has the right to go upon a train unless he intends to become a passenger, or is an employee, unless it is on some such business with the railroad company that can only be transacted on the train.   In this case there was no such necessity, the defendant had employed persons to attend to its own business and Mummaugh was licensee or volunteer on said train, and therefore, defendant was only required to use ordinary care toward him which it did.

The negligence charged was that the appellee started the train while Mummaugh was on the car.   This was done in the ordinary conduct of its business.   It was under no duty to him to keep its train still if all passengers were on or off, and all goods to be shipped were on the train, to await his pleasure or convenience to get off.   He knew it was a regular train an engine attached required to be on schedule time and that it would not remain at the station longer than necessary to

transact its business, and therefore, should not have placed himself in a position where he would be in peril.   He remained on the train until it had started, and then without the request of appellee got off, and by this act of his own he was hurt.   He assumed the risk of all injury by his conduct and the appellee cannot be held answerable for damages.

FOWLER, J., delivered the opinion of the Court.

This is an action brought in the Circuit Court for Carroll County by State use of Elizabeth Mummaugh and others against the Western Maryland Railroad Company for damages caused by the alleged negligent killing of George W. Mummaugh.   The defendant demurred to the whole *narr.* and the demurrer was sustained by the learned Court below.   Judgment on demurrer was given in favor of the defendant and the plaintiff has appealed.                                    ,

The only question, therefore, presented is whether the *narr.* or either count thereof sets forth a good cause of action, for if there be one good count, the demurrer should have been overruled.

We will proceed to examine the several counts as briefly as may be.   It appears that an amended *narr.* containing one count was filed 7th day of February, 1903.   On the 22nd May following the additional or second count was filed and finally three days thereafter the *narr.* was again amended by filing the additional or third count.

Which, if any of these counts, states a good cause of action?

The answer to this question ought, in this State, to be free from difficulty, in suits like this to recover damages caused by negligence, because the appropriate forms of pleading which have been so frequently approved by this Court are brief and simple.   The various counts of the *narr.* we are to consider are, however, characterized by unusual length.

Each of the counts alleges that on the 28th June, 1901, Mummaugh intending to have certain property, to wit, a calf trrnsported by the said defendant, a common carrier, from one of its stations, delivered said calf on the market platform of the

defendant at said station, and that on the arrival at that station of the train the said Mummaugh entered the car known as the market car of the defendant.

In the first count it is alleged that he entered the car with *the knowledge* of the defendant's agents, &c., in control of the train and in pursuance of a custom of persons having live stock to transport by the defendant's cars, while in the second the allegation is that the entry on the car to deliver the calf was made with the full knowledge of said employees and with their *consent, acquiescence* and *approval* and in accordance with the custom as in the first count. The third alleges that he entered the car "at the invitation and upon the request" of the defendant and in pursuance of the custom relied on in the other counts. Also the allegation of negligently starting the train and the injury thereby inflicted upon Mummaugh while he was in the exercise of due and reasonable care in leaving the car is common to all the counts.

There can be no question that if Mummaugh was lawfully on the car of the defendant, it will be liable in damages if his death was caused by its negligence, he being free from contributory negligence on his part. In *New York, &c., R. R. Co. v. Coulbourne*, 69 Md. 367, where the plaintiff was injured while leaving the car, former CHIEF JUDGE ALVEY in delivering the opinion of this Court said : " The plaintiff entered the car for a lawful purpose and was therefore rightfully in the car for such time as was reasonably sufficient to enable him to transact the business for which he entered it. The defendant by its agents and servants was bound to afford reasonable time for the transaction of the business before moving the train, and was also bound to give proper warning of the purpose to put the train in motion to enable the plaintiff by the use of reasonable care and diligence to leave the car without the risk of injury to himself in the act of getting off."

The contention of the defendant is that Mummaugh, according to the allegations of the *narr.* is a mere volunteer, and that it is immaterial whether the injury occurred while assisting the defendant's employees gratuitously or at their request.

But we do not think this position is reasonable, and certainly no authority was cited to sustain it. *Thompson on Negligence*, p. 1045, sec. 42, is one of the authorities, we find no appellee's brief. The author refers to several English cases, which, in our opinion, so far as this objection is concerned establish the correctness of each count of the *narr.* here demurred to. The author after laying down the general rule that a mere volunteer cannot recover says that "care must be taken, however, to distinguish the case of a mere volunteer from that of one assisting the servants of another, at their request, for the purpose of expediting his own business or that of their master." In the case of *Holmes* v. *North Eastern R. Co.*, L. R., 4 Exch. 254, affirmed in *Exchequer Chamber*, L. R., 6 Exch. 123, it appears that the plaintiff was a person entitled to the delivery of a wagon load of coal from the defendant railway company. The usual mode of delivery was impossible by reason of the crowded state of the station. He was hence allowed by the company's agent to go to another place, and, while so doing he fell through a hole and was injured, owing to the negligent keeping of the company's premises. It was held that he was engaged with the consent of the company, in a transaction which entitled him to have the company's premises kept in a reasonably safe condition. CHANNELL, B., said "We must infer from the silence of the station master (the defendant's agent), that he acquiesced in the plaintiff's going on to the siding (where the injury happened), for the purpose of getting coal in the way in which he did get it." KELLY, C. B., said, "although no express permission was given neither was there any prohibition." This is equivalent to saying that the employee knew the injured person was entering the defendant's premises and if there was no prohibition the consent of the company must be assumed. It was held that although not getting his coal in the usual way, the plaintiff was not a mere licensee, but was engaged with the consent and invitation of the defendants, in a transaction of common interest to both parties and was entitled to recover for the injury. The preceding case was cited in *Wright* v. *The London & N. W. R. W. Co.*, L. R.,

1 Queen Bench Div. 252. LORD COLERIDGE, C. J., saying
that it was a case of the greatest authority, because in the
Exchequer Chamber seven judges affirmed the decision for
the reasons given by the Judges of the Court of Exchequer.

The facts of the last named case were as follows : The
plaintiff sent a heifer by defendant's railway.   On the arrival
of the train at the station there being only two porters avail-
able to shunt the car to a siding, from which alone the heifer
could be delivered to the plaintiff, in order to save time he
assisted in shunting the car and while so doing he was run
against and injured through a train being negligently allowed
by defendant's servants to come out of the siding.   There was
evidence that the station master knew that the plaintiff was
assisting in shunting and assented to his doing so.  It was
held that the plaintiff was not a mere volunteer assisting the
defendant's servants, but was on the defendant's premises with
their consent for the purpose of expediting the delivery of his
own goods, and the defendants were, therefore, liable to him
for the negligence of their servants.   LORD COLERIDGE said :
" The plaintiff assisted in the shunting   *   *   and that was
done with the assent of the station master is proved by evi-
dence which satisfied the Court of Queens Bench and satisfies
us.   *   *   *   It was also proved that it was common prac-
tice for persons to assist in shunting the cattle trucks. "   In
another part of his opinion LORD COLERIDGE says :   " We
must take it that the station master acquiesced and so author-
ized the way in which the plaintiff assisted in getting delivery
of his heifer."   *   *   *   " It is plain, therefore, that the
plaintiff was not acting merely as a volunteer, in which case
he would have been bound to take all risks upon himself."

Counsel for the defendant contended that *Holmes* v. *North
Eastern, supra,* was a very different case from *Wright* v. *Rail-
way Co., supra,* because the injury arose in the latter case not
from the state of the premises, but from the negligence of ser-
vants ; but the Court did not agree with him.   Opinions were
also delivered by the other Judges to the same effect.   The
opinion of JAMES, L. J. is certainly to be commended for its

brevity.   It is as follows:  "I think it would be a shocking state of the law if a person, in the position the plaintiff was, could not recover.   I am glad to find that the case of *Holmes* v. *North Eastern Ry. Co.* has established a principle within "which this case falls, which is in accordance with common sense."   But it appears from the report of *Holmes* v. *N. W. E. R. W. Co.* that several of the Judges, although they agreed the plaintiff should recover, had considerable doubt as to the correctness of their conclusion although founded, as JUSTICE JAMES says, on common sense.

Tested by the law of the cases we have just cited there can be no possible doubt that the second and third counts state a good case, for the second alleges that Mummaugh entered the car to deliver his property to the defendant with the knowledge, consent, acquiescence and approval of its employees, etc., and according to a custom and practice of people shipping live stock so to do.   And the third that such entry was made by Mummaugh on the invitation and at the request of said employees and also according to the custom relied on in the second count.   The first count fails to allege either an invitation or request or any express assent on the part of the employees.   But it does allege their knowledge as well as the custom and practice.   It seems to us that if it be proved to the satisfaction of the jury that the employees had knowledge that Mummaugh had gone upon the train to deliver his property for transportation and further that such entry was according to the usual course of business, that is to say, according to the custom and practice before mentioned, the jury not only could, but it would have been their duty, to draw the inference that Mummaugh's entry on the car was with the assent of defendant.   In the course of his opinion in *Wright* v. *L. N. W. R. W. Co.*, *supra*, CLEASBY, B., said that that case "Seems to have established that where a man is on the premises of a railway company for the purpose of carrying into effect a contract of carriage and delivery, and gets the assent of the company (as indicated by the usual course of business) to assist in the delivery, the plaintiff is entitled to redress if the

part of the premises where he is engaged is dangerous to persons engaged upon it and injury ensues to him.''

The cases we have cited hold, as we read them, that when a person enters upon the car or train of a railroad company to deliver his property for transportation and this entry is made with the knowledge and assent of the company, and according to a custom so to do, or if he enters with the company's knowledge, assent, acquiescence and approval and according to said custom, or, if he enters on the invitation and at the request of the railroad company to deliver his property for shipment, the railroad company is bound by the exercise of prudence, reasonable care and skill to see that he is not injured, and that if, as alleged in each count of the *narr.*, the injury was caused directly by the wrongful act, negligence and default of the railroad company and without negligence on the part of the person injured, the latter should recover.

Being of opinion that the several counts of the *narr.* here demurred to are substantially within the rule approved by the foregoing decisions, and as JAMES, L. J., says, according also, "to common sense," we will have to overrule the demurrer to the *narr.* with one exception.

The second count appears to allege that Mummaugh was *lawfully* in and upon the car for the purpose of delivering his property for shipment. Whether he was so, that is legally, in the car for the purpose named, is the chief question in the case, and this, of course, is a question of law and not of fact, and hence it was error to allege it in the *narr.* But there still remains the third count, which, under any aspect of the case, we think is good.

We are not aware that the *narr.* has been criticised on any other grounds than on those we have discussed, and being of opinion that the demurrer should have been overruled, the judgment appealed from will be reversed.

> *Judgment reversed with costs, and case remanded for new trial.*

(Decided December 4th, 1903.)