72 So.2d 300

ALABAMA POWER CO. v. IRWIN.

7 Div. 203.

Supreme Court of Alabama.

March 11, 1954.

Rehearing Denied May 13, 1954.

674

Frank B. Embry, Pell City, Martin, Turner, Blakey & Bouldin, Alvin W. Vogtle, Jr., Birmingham, for appellant.

Starnes & Holladay, Pell City, D. G. Ewing, Birmingham, for appellee.

SIMPSON, Justice.

This is a suit for wrongful death under the homicide statute. A trial by jury was had, resulting in a verdict in favor of the appellee in the amount of $20,000. The appeal challenges the action of the trial court in refusing the affirmative charge for appellant and to grant its motion for a new trial on the ground of the excessiveness of the verdict. Neither question is entirely free of difficulty.

Deceased was electrocuted when a metal pipe thirty feet long, which he and a fellow worker were removing from a water well pump, came in contact with an uninsulated 110-volt service line maintained by appellant for the purpose of conveying electricity to the well and on past that point to deceased's residence. The wire with which the deceased thus came in contact was approximately twenty-five feet from the ground, the horizontal distance from a point on the ground directly underneath such wire to the well was between ten and twelve feet and the diagonal distance from the wire to the well was approximately twenty-eight and one-half feet. The evidence showed that there was danger of electrocution from 110 volts of electricity where a person is properly grounded, viz., standing in wet soil, wearing wet clothes or in contact with water. Water was drawn from this well at the time of the accident and had been continuously prior thereto for approximately ten years by means of an electric pump installed therein and the electricity during that time was supplied by the appellant over wires maintained by it. At one time this service line

did not reach to the vicinity of the well, but about a year and a half before the accident appellant extended the line on past the well located as described above. It was necessary to make repairs to this home water supply unit about once a year and the repair work being done by decedent on the occasion of the accident was the first undertaken since this extension of the power line. The well was situated within three feet of a public highway and was unobstructed and the appellant must have known of the condition of the locale, since its local manager and another employee visited the premises on six occasions during the twelve-month period next preceding the accident. About a month prior to the accident lightning had struck the pump house, causing the motor to burn out; as a result thereof certain installations were being made and at some time during this period employees of appellant had been on the premises. At the time of the accident the roof of the well house had been removed and the floor was wet. The decedent had removed the pipe from the well and placed it in a brace and was in the act of removing the pipe from the brace, which was necessary in the repair of the pump, and in doing so the pipe, being wet and slick, slipped in the deceased's hands and came in contact with the uninsulated wire, resulting in his immediate death.

■■ The pertinent rule has been thus expressed: ."The obligation of the electric company to insulate is not absolute, but alternative, in its nature. 'Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless.'" Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979, 982; Curtis on Law of Electricity, § 511. The duty to insulate exists whenever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. Littleton v. Alabama Power Co., 243 Ala. 492, 10 So.2d 757; Dwight Mfg. Co. v. Word, supra. And where conditions or location considered, it would be dangerous to have electric wires uninsulated, failure to insulate is negligence. Chase v. Washington Water Power Co., 62 Idaho 298, 111 P.2d 872.

■ "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Grand Trunk Ry. Co. of Canada v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 683, 36 L.Ed. 485; Reaves v. Maybank, 193 Ala. 614, 69 So. 137; Tennessee Mill & Feed Co. v. Giles, 211 Ala. 44, 99 So. 84.

■■ While most of the cases hereafter referred to were cases where the voltage was higher than that in the present case, we can rationalize no distinction with respect to the issue of negligence being one for the determination of the jury where, as here, the evidence showed that the defendant had run the power line by the well after it had been in use for several years and there was danger of electrocution from contacting the low voltage wire when dampness provided a proper ground. The duty is to exercise that degree of care commensurate with the danger involved. Alabama Power Co. v. Berry, 254 Ala. 228, 48 So.2d 231. The circumstances in the case at bar, viz., the uninsulated wire being extended by appellant in close proximity to a water well, the proven necessity of annual repair thereto, and the undisputed fact of appellant's employees' visits on the premises after such extension and while the well was in the process of being repaired (although not the specific repair work being done on the day of the accident) impels the conclusion that the question of the appellant's negligence was for the jury. See Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224 (decedent electrocuted while attempting to disengage with iron pipe a child's parachute from uninsulated wire located twenty and one-half feet above decedent's premises); Southern Pine Electric Power Ass'n v. Denson, 214 Miss. 397, 57 So.2d 859, 59 So.2d 75 (decedent electrocuted when an iron pipe he was removing from a well came in contact with [or close proximity to] an uninsulated wire

located twenty-five feet off the ground and within three to six feet horizontally from the well); Brillhart v. Edison Light & Power Co., 368 Pa. 307, 82 A.2d 44 (decedent electrocuted when a metal pipe he was installing came in contact with uninsulated wire located five feet horizontally from well and eighteen feet off the ground); Howell v. San Joaquin Light & Power Corp., 87 Cal.App. 44, 261 P. 1107 (decedent electrocuted when a metal pipe he was raising came in contact with uninsulated wire elevated nineteen feet above agricultural lands); Card v. Wenatchee Valley Gas & Electric Co., 77 Wash. 564, 137 P. 1047 (decedent electrocuted as a result of metal pipe he was carrying contacting an uninsulated wire within seventeen feet of the ground); Walpole v. Tennessee Light & Power Co., 19 Tenn. App. 352, 89 S.W.2d 174 (metal pipe contacting uninsulated wire elevated twenty-three feet from ground and nine feet horizontally from well). See also Rome Ry. & Light Co. v. Jones, 33 Ga.App. 617, 127 S.E. 786; Fairbairn v. American River Electric Co., 179 Cal. 157, 175 P. 637.

■ The fact that it has been said that voltage of 110 is not regarded as highly dangerous, Birmingham Ry., Light & Power Co. v. Canfield, 177 Ala. 422, 59 So. 217, does not alone relieve the appellant of the duty to insulate or exercise reasonable care, City of Marlow v. Parker, 177 Okl. 537, 60 P.2d 1044; Standard Accident Ins. Co. v. Minnesota Utilities Co., 207 Minn. 24, 289 N.W. 782; nor is the danger to be guarded against limited to that of mere bodily contact but includes the hazard of shock transmitted through such conducting objects as persons in that vicinity are reasonably likely to be carrying or handling. City of Marlow v. Parker, supra.

As was said in Standard Accident Ins. Co. v. Minnesota Utilities Co., supra:

"The defendant's contention that it is, as a matter of law, not guilty of negligence which caused Nelson's death is based largely upon the argument that it could not have reasonably anticipated harm to anybody from the non-insulated condition of its wires; that the voltage of the current was so low that under ordinary conditions it would be harmless to any person coming in contact with it or at most would give but a slight shock. We think, however, that the defendant should have reasonably anticipated that workmen would be engaged in the vicinity of these wires and that, with the defendant's special and superior knowledge of the hazards connected with the low voltage under circumstances where dampness provided a ground and therefore a circuit through which the electricity might pass from the wire through the workman * * * with fatal or injurious consequences, the question of the defendant's negligence was at least a question for the jury." 289 N.W. 784.

The case of Van Leet v. Kilmer, 252 N.Y. 454, 169 N.E. 644, 645, cited by appellant, is distinguishable from the case at bar. There it appeared that the defendant supplied electric power in the amount of 110 volts to a shoe machinery factory. At the place where the decedent came in contact with the wire, however, the wire was insulated and "was not frayed or frazzled." In McClusky v. Duncan, 216 Ala. 388, 113 So. 250, also cited by the appellant, the plaintiff, a customer of the defendant, in endeavoring to turn on an electric light touched an uninsulated low voltage wire which caused her to receive a shock; but there it could not have been reasonably anticipated by the defendant that the light would be out—there was no implied or actual notice thereof—and that if so it could not have been reasonably anticipated that a customer would attempt to turn on the light in an improper manner (when there was sufficient light by which one could see the bulb). Whereas in the case at bar, the extension of the wire so as to be in proximity to the well was made many years after the well had been so located and the evidence showed that it was necessary to repair the well about once a year, that repairs, in fact, were made about that often, and in order to make the

678

repairs, it was necessary to remove the pipe from the brace—all of which appellant should reasonably have anticipated, being familiar with the locus in quo, and having special and superior knowledge of the hazard of a low voltage wire under the circumstances related.

 The appellant, citing Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So. 854, also urges that his negligence, if any, was not the proximate cause of decedent's death. One guilty of negligence is held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act have thought reasonably possible to follow, if they had occurred to his mind. Armstrong v. Montgomery Street Ry. Co., 123 Ala. 233, 26 So. 349; Briggs v. Birmingham Ry. Light & Power Co., 188 Ala. 262, 66 So. 95; Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224. Unless the evidence is entirely free from doubt or adverse inference the question is one for the jury; and whether or not the plaintiff's injury is the proximate result of the defendant's negligence is ordinarily a question for the jury. Briggs v. Birmingham Ry. Light & Power Co., supra; Sullivan v. Alabama Power Co., supra. We are of the opinion that the distinction made in the Sullivan case, supra, between that case and the Cooper case is equally applicable to the case at bar: "The accident [in the Cooper case] was so extraordinary as not to require anticipation by the defendant." Viewing the evidence in the light of the above, we conclude that the question of proximate cause was properly for the jury.

With respect to the second question—the excessiveness of the verdict—decision is even more perplexing. The damages to be awarded in such cases are not by way of compensation for a life taken. Pecuniary loss and mental suffering are not to be considered. The purpose of the act is "to prevent homicides" and the admeasurement of recovery must be referable to the quality of the wrongful act and the degree of culpability involved. Alabama Power Co. v. Talmadge, 207 Ala. 86, 93 So. 548, 558; Parke v. Dennard, 218 Ala. 209, 118 So. 396. The circumstances of the homicide do not present the conditions of "highest culpability" found to exist in most of the cited cases sustaining awards such as returned here. Simple negligence only is alleged and from the evidence it is not conceived that more culpability could have been found and on this question the issue was a close one. We therefore are inclined to the view that the verdict exacted too high a punishment and the court in consultation, after studious consideration, has fixed upon the sum of $15,000 as the limit of a proper and just recovery and the judgment below will be here affirmed on condition of a remittitur of the excess being filed by the appellee. Otherwise the judgment will be ordered reversed and a new trial granted.

Affirmed conditionally.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.